31174.  ERNEST G. BEAUDRY INC. *v.* FREEMAN *et al.*

DECIDED APRIL 25, 1946.

*Smith & Long,* for plaintiff in error.

*Durwood T. Pye, Tye, Thomson, Tye & Edmondson,* contra.

GARDNER, J. ■ Special demurrer 1, directed to paragraph 11 of the amended petition, is special only to the extent that this paragraph of the amendment only asks that the word "Incorporated" be added to the name Ernest G. Beaudry. The other portions of the first ground of demurrer are general as to the pleading, and will be treated along with the general demurrer. It will be observed that, so far as the defendant Ernest G. Beaudry Inc. is concerned, the suit was originally instituted against it and others. Although the original petition alleged that it was brought against Ernest G. Beaudry, the suit was served on Ernest G. Beaudry, a corporation, by serving the vice-president and treasurer thereof; and later an answer was filed by the corporation, in which answer it was admitted that "Ernest G. Beaudry Inc. is named as a defendant in the above-stated case." Thus it will be seen that the defendant admitted that the service was made upon it as a corporation. Therefore it was proper to add the word "Incorporated," in order to show the correct corporate name. *Love* v. *Commercial Credit Co.,* 64 *Ga. App.* 18 (12 S. E. 2d, 99). The court did not err in allowing the amendment so far as this ground of the demurrer is concerned.

■ Special demurrer 2, directed to alleged defects in paragraph 17 of the amended petition, is general in its terms, and will be so treated hereinafter, except as to that portion of this paragraph

which complains of paragraph 17 of the petition, wherein it is prayed that The First National Bank, as executor of the will of Ernest G. Beaudry and as trustee thereunder, be made a party to this case and be served as executor and trustee, even though no prayer for judgment was asked against The First National Bank in such representative capacity. In this particular it is contended that a new party defendant was thereby illegally added to the petition. With this contention we can not agree. Under all the facts of this case, it was proper for the plaintiff to make the executor and trustee a party defendant, even though no judgment was prayed against such defendant, and even though the statute of limitations had expired as to the cause of action against the executor and trustee either in his representative or individual capacity. This suit was instituted in a court of full equitable authority and jurisdiction. If there are to be any equitable adjustments as between the defendant corporation, Ernest G. Beaudry Inc., and the executor and trustee, the court would have all the necessary parties before it and adjudicate all issues which might arise. While it is true that the plaintiff made no prayer for a judgment against the executor and trustee, and no equitable relief was prayed, we can conceive of no harm which could possibly result to the defendant corporation, Ernest G. Beaudry Inc., by the allowance of such amendment. If the statute of limitations had expired as to the executor and trustee in any capacity, this could not effect the rights of the defendant, Ernest G. Beaudry Inc. There is no contention that the statute of limitations had expired as to any rights or remedies as between The First National Bank and Ernest G. Beaudry Inc. If Ernest G. Beaudry Inc. was liable for the tort alleged in the petition, the suit against it was brought well within the two-year period of the statute of limitations. So it seems to us that the main issue in the case is, whether or not, under the situation revealed by the petition as amended, Ernest G. Beaudry Inc. is liable for the tort in question; and is not concerned with whether the statute of limitations had expired as to The First National Bank. This contention is without merit.

■ This brings us to a consideration of the general grounds of the demurrer, and that is the main and most complicated issue from the standpoint of the briefs of both parties. In the outset

we might state that we have no reason to question that, if the negligence alleged in the petition had been committed by an individual, the petition would have set out a cause of action. Nothing to the contrary is argued by the attorneys for the plaintiff in error, but counsel for Ernest G. Beaudry Inc. (the only plaintiff in error) base practically their entire argument on the proposition that under the petition as amended—even though an actionable tort was committed on the plaintiff—Ernest G. Beaudry Inc. is not liable therefor. We will discuss this question under subheads.

(a) It is contended that the tortious act alleged in the petition, if such constitutes an actionable tort, was one committed by the executor in his individual and not his representative capacity, and therefore it was not a liability against the estate of the assets of the decedent, Ernest G. Beaudry; but that, if a cause of action existed, it was against The First National Bank in its individual capacity and not as executor of the will or as trustee of the estate thereunder. Beaudry, the decedent, died on January 6, 1943, and the alleged tortious act occurred on February 6, 1943, after The First National Bank had qualified as executor under the will and as trustee of the decedent's estate thereunder. In support of the contention that this tortious act was the liability of the exec-utor and trustee individually, rather than in a representative capacity, counsel for Ernest G. Beaudry Inc. cite the case of *Hundley* v. *Pendleton,* 9 *Ga. App.* 268 (70 S. E. 1115), in which Judge Powell, speaking for the court said: "There are some cases where a cause of action will arise against an administrator in his repre-tentative capacity, because of the results that have followed from a tortious act committed by him; but in such cases it is not a cause of action ex delicto that arises, and the liability of the estate is not to be determined by the measure of damages which applies in tort actions, but upon an entirely different basis. Thus, for example, an administrator, purporting to act in his representative capacity, illegally takes possession of money, or takes possession of personal property and converts it into money and appropriates that money to the use and benefit of the estate. In such a case the estate can not be sued in tort for the administrator's unlawful taking of the money or the property; but an action for money had and received for the use and benefit of the estate will lie against the administrator, and the estate may be charged with liability,

not necessarily for the full value of the money or of the property, but just to the amount that the estate has directly received the benefit. . . So far as we are now aware, the only instance in which it is recognized that an administrator in his representative capacity can be held liable in an action ex delicto (otherwise than for the decedent's own torts) is where the decedent unlawfully takes possession of property, real or personal, and the administrator afterwards continues that unlawful possession. Thus, where an action in ejectment (which is elementally an action ex delicto) is brought against the administrator of an estate, and it appears that his testator took possession of the land, and that the administrator continued the possession in behalf of the estate, it is held that the administrator in his representative capacity is liable for the mesne profits." Counsel also cite the cases of *Callaway* v. *Livingston,* 28 *Ga. App.* 453 (111 S. E. 742), and *Gallovitch* v. *Wylly,* 52 *Ga. App.* 818 (184 S. E. 786). Those cases only enunciate the general rule that an administrator or executor can not be held liable for any tortious act committed by him in his representative capacity, but that he is liable, if at all, in his individual capacity for any tortious acts committed by him during the administration of the estate, except that he is liable in his representative capacity, in the words of the Supreme Court in *Carr* v. *Tate,* 107 *Ga.* 237 (33 S. E. 48), if "the estate received the fruits of the tortious act." Thus, if the tortious act results in a pecuniary benefit to the estate, the representative is liable in his representative capacity. If during the administration of the estate he commits a tort from which the estate receives no pecuniary benefit, then the representative is liable in his individual capacity. Even where the estate receives a pecuniary benefit by a tortious act of the representative, as Judge Powell very aptly states in the *Hundley* case, supra, "it is not a cause of action ex delicto, that arises," but it is a cause of action based upon the quasi-equitable remedy of money had and received. As we have stated, the above decisions are to the effect that it is the general rule that a representative of the estate is not liable in his representative capacity for a tortious act committed by him, unless the estate which he represents receives a pecuniary benefit therefrom. This general rule applies only where one is acting in his representative capacity in the administration and distribution of estates under the general

law, and where no duty or right of control over the property is vested in him beyond his mere representative power. In the cases above cited on behalf of Ernest G. Beaudry Inc., the representative was not invested with any duty or right beyond his mere representative power under the general law. Under such law the representative of the estate of a decedent has the right and duty, generally, only, to preserve the estate of the decedent and to distribute it to those entitled to receive it. This is what we mean when we say "a mere representative" of the estate of the deceased. Therefore we are of the opinion that the doctrine discussed in the cases above cited is inapplicable to the facts of the instant case.

(b) After the death of Ernest G. Beaudry, The First National Bank qualified as executor under the testamentary scheme of his will, and became trustee of his automobile business, including the Henry Grady Garage, on the premises of which the sign in question was maintained, conducted the automobile business as a going concern, and thereafter promoted the formation of the defendant corporation, Ernest G. Beaudry Inc. After the organization of the corporation, the executor received, in his representative capacity, all the stock thereof and transferred to the corporation all the assets of the automobile business, including Henry Grady Garage, which had been a unit of the automobile business of Ernest G. Beaudry during his lifetime. And the petition alleges: "and said corporation assumed in writing on March 31, 1943, the claims of all creditors of said estate . . subject to the indebtedness, present and future, of Mr. Beaudry's estate, same being ratified and confirmed by all the incorporators and by said corporation; and Mr. Beaudry's will so provided." The petition further alleges: "The premises upon which said sign was maintained have at all times been occupied and controlled in connection with said automobile business carried on by Mr. Beaudry during his lifetime and thereafter by his executor and then and now by said corporation, which succeeded to said business, all its assets and liabilities, said business having at all times continued in the same manner under the trade name 'Ernest G. Beaudry,' and there having been no change therein except for the mere change of title resulting from Mr. Beaudry's death and the subsequent forming of said corporation." It will thus be observed that it was the testamentary scheme that the business of Ernest G. Beaudry was to be con-

tinued by the executor and trustee, and that his estate should not be administered by it as a mere representative of the estate; but the testator specifically authorized and directed that his business be conducted by his representative as a going concern. This being true, the executor and trustee under the will was engaged in business as an individual under the terms of the will, and became subjected and liable to the hazards of the business in its representative capacity just as Mr. Beaudry would have been during his lifetime. It would be dangerous to the public and unfair to industry to interpret the provisions under the testamentary scheme of the will in question otherwise. This view is based upon ample authority. In *Miller* v. *Smythe*, 92 *Ga.* 154, 158 (18 S. E. 46), the Supreme Court said: "There can be no doubt that Mr. Miller, as trustee, had authority to rent the premises to the plaintiff. He therefore legally and rightfully, in his capacity as trustee, assumed the relation of landlord; and this being true, it is, to our minds, a plain proposition, both of law and of justice, that he was bound to perform the duty, enjoined by statute upon all landlords, of keeping the premises in repair, and especially so when he expressly undertook by agreement with his tenant so to do. It follows necessarily that he is, in his representative capacity, liable to the plaintiff for a violation of this duty and of the contract he made in pursuance thereof. And this is right; because the trust estate. obtained the benefit of the contract made by the trustee, and should, as to the tenant, bear whatever burden the law imposes upon landlords. As to the ultimate liability, if any, of the trustee to the cestui que trust for his failure to perform his duty in the respect indicated, we are not now called upon to determine. We simply hold that, if the plaintiff supports by evidence the allegations of her declaration, she is entitled to a judgment subjecting the trust estate to whatever damages she may have sustained." This court, in *Evans* v. *Dickey*, 50 *Ga. App.* 127 (2) (177 S. E. 87), said: "As a general rule, the executor or administrator of an estate is not authorized to make repairs or improvements on the real estate belonging to the estate of his decedent, and thereby subject the estate or those beneficially interested to liability for such expenditures; unless, of course, the power to manage the real estate for the benefit of the devisees has been given by will, or has been conferred by statute." Again, this

court in *Dobbs* v. *Noble, 55 Ga. App.* 201, 202 (189 S. E. 694), said: "An executor, who by will is given authority to manage and rent a building for the benefit of himself and other legatees, may be held liable as such executor for injuries resulting from a defective condition of the rented premises, under the legal rules which control individuals." Under the doctrine announced in the decisions cited under this division, there is no doubt in our minds but that under the testamentary scheme The First National Bank, as executor and trustee of Ernest G. Beaudry, was liable to the plaintiff for the injuries inflicted by its tortious act in its representative and not individual capacity. And the plaintiff had a right of action against the estate for which the executor and trustee was liable in its representative capacity.

(c) Since we thus determine that the suit was maintainable against the executor and trustee in its representative capacity, we must now inquire whether under the allegations of the petition Ernest G. Beaudry Inc., is liable for having stepped into the shoes of the executor and trustee. The question is, whether the defendant corporation is to carry this burden which it agreed in writing to carry when it received all the assets of Ernest G. Beaudry. It will be noted from the allegations of the petition that, upon the transfer of the assets of the Ernest G. Beaudry estate by the executor and trustee, the defendant corporation agreed in writing to assume the liabilities. Since we have seen that, under the testamentary scheme of the will, the executor and trustee was authorized to deal with the estate of Ernest G. Beaudry in the same manner and to the same extent that Beaudry could have done in his lifetime, restricted only by the terms of the will, we can see no reason why a contract between the executor and trustee and the corporation would not be binding upon the corporation as to the liability in question. This is particularly true when the corporation received all of the assets and assumed in writing this liability. See, in this connection, *Sheppard* v. *Bridges,* 137 *Ga.* 615 (74 S. E. 245); *Reid* v. *Whisenant,* 161 *Ga.* 503 (131 S. E. 904, 44 A. L. R. 599); *National Mortgage Corp.* v. *Bullard,* 178 *Ga.* 451 (173 S. E. 401). See also 15 A. L. R. 1112, 1181. As analogous to the principle under discussion, that the written assumption on the part of the corporation of all claims of all creditors and all indebtedness, present and future, of Mr. Beaudry's estate included

the tortious act as set forth in the petition, we call attention to the case of *Coggin* v. *Central of Ga. R. Co.*, 62 *Ga.* 685 (35 Am. R. 132). This same authority decides to the effect that the name of the action is immaterial, but that it is the facts alleged which determine the character of the action. We call attention to the principle immediately last above mentioned for the reason that counsel for the defendant corporation contend that the petition in the present case is one at law rather than one in equity, because no equitable relief was prayed. While no equitable relief was prayed, and while judgment was asked only against Ernest G. Beaudry Inc., the allegations of the petition were equitable in their nature as to some of the parties, and the suit was in a court of equitable jurisdiction with all necessary parties before it, even though no equitable relief was sought. See, in this connection, also 15 A. L. R. 1188, 1190; 39 A. L. R. 147. In our opinion the authorities above cited are sufficient on which to base an affirmance of the judgment overruling the demurrer.

There is another principle of law aside from what we have said on the general grounds which is doubtless sufficient under the facts of this case to subject the defendant corporation to liability for the injuries alleged in the petition. That principle is: Since the will directed that the executor and trustee form the corporation, Ernest G. Beaudry Inc., and transfer the assets of Beaudry's estate to the corporation, in exchange for the corporate stock of the corporation, and this was done under the testamentary scheme, the corporation became liable for the tort. In support of this principle see *Chicago &c. Mfg. Co.* v. *Talbotton Creamery &c. Co.*, 106 *Ga.* 84 (2) (31 S. E. 809). We will not discuss this principle further.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*